# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| JOSEPH COLLORA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:20-CV-00222 JAR |
| ) | |
| ANDREW M. SAUL, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Plaintiff Joseph Collora's application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq*. and supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq*.

**I.   Background**

Plaintiff applied for benefits under Titles II and XVI of the Social Security Act on June 17, 2016, alleging disability as of February 14, 2011 due to a hernia, pain and arthritis in his neck, double vision, memory problems, balance problems, migraines, dizziness, loss of sensation in his skin, and difficulty controlling his right hand. (Tr. 398). He later amended the alleged onset date to July 12, 2016. (Tr. 378). After his application was denied at the initial administrative level, Plaintiff requested a hearing before an administrative law judge ("ALJ"). Following a hearing on June 19, 2018, the ALJ issued a written decision on October 18, 2018 denying Plaintiff's application. Plaintiff's request for review by the Appeals Council was denied on December 10,

2019. (Tr. 1-8). Thus, the decision of the ALJ stands as the final decision of the Commissioner. See Sims v. Apfel, 530 U.S. 103, 107 (2000).

**II.     Facts**

The Court adopts Plaintiff's Statement of Material Facts (Doc. No. 22-1) to the extent they are admitted by the Commissioner (Doc. No. 25-1), and Defendant's Statement of Additional Material Facts (Doc. No. 25-2).[1] Together, these statements provide a fair and accurate description of the relevant record before the Court. Additional specific facts will be discussed as necessary to address the parties' arguments.

**III.    Standards**

The Court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. Adkins v. Comm'r, Soc. Sec. Admin., 911 F.3d 547, 550 (8th Cir. 2018); see also Johnson v. Astrue, 628 F.3d 991, 992 (8th Cir. 2011). Substantial evidence is less than a preponderance, but enough that a reasonable mind would accept it as adequate to support the Commissioner's conclusion. Sloan v. Saul, 933 F.3d 946, 949 (8th Cir. 2019) (citing Chismarich v. Berryhill, 888 F.3d 978, 979 (8th Cir. 2018) (per curiam)). The Court may not reverse merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. Chaney v. Colvin, 812 F.3d 672, 676 (8th Cir. 2016). A reviewing court must consider evidence that both supports and detracts from the ALJ's decision. Id. If it is possible to draw two inconsistent positions from

---

[1] The Court notes that ¶¶ 29-33 of Plaintiff's statement of facts refer to material submitted to the Appeals Council but not exhibited because it did not establish a reasonable probability that it would change the ALJ's decision. (Tr. 4-5). Upon review, the Court finds the additional evidence submitted to the Appeals Council is cumulative of the evidence in the record and considered by the ALJ, and thus it is not new and is not considered. See 20 C.F.R. § 404.970(b); Perks v. Astrue, 687 F.3d 1086, 1093 (8th Cir. 2012). Further, ¶¶ 34-38 reference material that does not relate to the period at issue and thus does not affect the ALJ's decision.

the evidence and one of those positions represents the Commissioner's findings, the court must affirm the decision of the Commissioner. Id. In other words, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." Papesh v. Colvin, 786 F.3d 1126, 1131 (8th Cir. 2015). A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance. Id. The Court defers heavily to the findings and conclusions of the Social Security Administration. Wright v. Colvin, 789 F.3d 847, 852 (8th Cir. 2015) (quoting Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010)).

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) The findings of credibility made by the ALJ;
(2) The education, background, work history, and age of the claimant;
(3) The medical evidence given by the claimant's treating physicians;
(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;
(5) The corroboration by third parties of the claimant's physical impairment;
(6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and
(7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980); see also Stamper v. Colvin, 174 F. Supp. 3d 1058, 1063 (E.D. Mo. 2016).

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The impairment

must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a), 404.1520(a). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). First, the claimant must not be engaged in "substantial gainful activity" ("SGA"). 20 C.F.R. §§ 416.920(a), 404.1520(a). Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001)).

If the claimant has a severe impairment, the ALJ must determine at step three whether any of the claimant's impairments meets or equals an impairment listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

If the claimant's impairment does not meet or equal a Listing, the ALJ must determine the claimant's residual functional capacity ("RFC"). See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00; 20 C.F.R. § 404.1520a(c)(3). RFC is an assessment of the claimant's ability to perform sustained work-related physical and mental activities in light of his impairments. SSR 96–8p. The relevant mental work activities include understanding, remembering, and carrying out instructions; responding appropriately to supervision and co-workers; and handling work pressures in a work setting. 20 C.F.R. § 404.1545(c).

At step four, the ALJ must determine whether, given his RFC, the claimant can return to his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); Perks v. Astrue, 687 F.3d 1086, 1091-92 (8th Cir. 2012). If the claimant can still perform past relevant work, he will not be found to be disabled; if not, the ALJ proceeds to step five to determine whether the claimant is able to perform any other work in the national economy in light of his age, education and work experience. 20 C.F.R. §§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then he will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v).

Through step four, the burden remains with the claimant to prove he is disabled. Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. Brock v. Astrue, 674 F.3d 1062, 1064 (8th Cir. 2012). "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Harris v. Barnhart, 356 F.3d 926, 931 n. 2 (8th Cir. 2004); see also Stamper, 174 F. Supp. 3d at 1063.

**IV. Decision of the ALJ**

The ALJ found Plaintiff had not engaged in substantial gainful activity since the amended alleged onset date of July 12, 2016. (Tr. 268). The ALJ found that Plaintiff had the severe impairments of inguinal hernia, multiple sclerosis, degenerative disc disease, and poly substance abuse, but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 269-70).

After considering the entire record, the ALJ determined Plaintiff has the RFC to perform sedentary work as defined in 20 CFR §§ 404.1567(a) and 416.967(a), except that he can never climb ladders, ropes and scaffolds and never kneel, crouch, or crawl. He can occasionally climb ramps and stairs as well as stoop. He should avoid concentrated exposure to wetness, humidity, excessive vibration, pulmonary irritants, and extremes of hot and cold as well as workplace hazards such as moving machinery and unprotected heights. In addition, Plaintiff can perform simple, routine, repetitive tasks in a low stress job defined as one that requires only occasional decision making, occasional changes in the workplace and no placed production work. (Tr. 270).

Based on the testimony of the vocational expert ("VE"), the ALJ concluded that Plaintiff is unable to perform any past relevant work (Tr. 274), but that, after considering Plaintiff's age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that he can perform, such as Order Clerk: Dictionary of Occupational Titles (DOT) No. 209.567-014, with approximately 17,000 jobs nationally; Document Preparer: DOT No. 249.587-018, with approximately 40,000 jobs nationally; and Addresser: DOT No. 209.587-010, with 11,000 jobs nationally, all unskilled with a SVP of 2. (Tr. 231-32, 274-75). Thus, the ALJ found Plaintiff was not disabled as defined by the Act. (Tr. 275).

## V. Discussion

Plaintiff raises three issues on appeal. First, Plaintiff argues the ALJ erred in finding his migraine headaches were a non-severe impairment. (Doc. No. 22 at 3-7). Second, Plaintiff argues the ALJ failed to properly evaluate the opinion of his treating physician, Tariq Jawaid Alam, M.D. (Id. at 7-10). Third, Plaintiff argues the ALJ failed to properly evaluate his subjective symptoms. (Id. at 10-12). For these reasons, Plaintiff contends the RFC is not supported by substantial evidence. (Id. at 12-13). The Commissioner responds that substantial evidence supports the ALJ's determination of Plaintiff's impairments at step two (Doc. No. 25 at 6-7), as well as his evaluation of the medical opinion evidence (id. at 10-15) and assessment of Plaintiff's symptoms (id. at 7-10).

### A. Severe impairment

At step two of the sequential process, the ALJ must determine that the claimant has a severe mental or physical impairment that has or is expected to last twelve months or will result in death. 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(i)-(ii); 416.909, 416.920(a)(4)(i)-(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir.2007); 20 C.F.R §§ 404.1520(c), 416.920(c). Basic work activities mean the abilities and aptitudes necessary to do most jobs, including physical functions; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, coworkers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b); 416.921(b). The claimant bears the burden of establishing his impairment is severe. Kirby, 500 F.3d at 707 (citing Mittlestedt v. Apfel,

204 F.3d 847, 852 (8th Cir. 2000)). Although severity is not an onerous requirement to meet, it is also "not a toothless standard." Id. at 708.

The ALJ found Plaintiff had the severe impairments of inguinal hernia, multiple sclerosis, degenerative disc disease, and poly substance abuse and the non-severe impairments of GERD, hypertension, knee joint effusion, diplopia (double vision), degenerative disc disease, and headaches. (Tr. 273). The ALJ stated that Plaintiff's non-severe impairments were considered in combination with his severe impairments in determining his RFC. (Id.).

Courts frequently find an ALJ's exclusion of a particular impairment as severe does not require reversal where the ALJ considers all of a claimant's impairments in his or her subsequent analysis. See Hankinson v. Colvin, No. 4:11-CV-2183-SPM, 2013 WL 1294585, at *12 (E.D. Mo. Mar. 28, 2013) ("[F]ailing to find a particular impairment severe does not require reversal where the ALJ considers all of a claimant's impairments in his or her subsequent analysis."); Givans v. Astrue, No. 4:10–CV–417–CDP, 2012 WL 1060123, at * 17 (E.D. Mo. Mar. 29, 2012) (holding that even if the ALJ erred in failing to find one of the plaintiff's mental impairments to be severe, the error was harmless because the ALJ found other severe impairments and considered both those impairments and the plaintiff's non-severe impairments when determining the RFC); see also 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2) ("If you have more than one impairment. We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity.").

Here, the ALJ clearly considered Plaintiff's headaches in his analysis after Step Two, discussing Plaintiff's treatment records which suggested that medication was helping to manage his migraine symptoms. The ALJ specifically noted that during a July 18, 2017 appointment with

8

his neurologist, Dr. Alam, Plaintiff reported multiple neurologic complaints, including poor concentration, memory problems, and daily headaches. (Tr. 271, 1007). Dr. Alam suspected Plaintiff's headaches were "medication rebound headaches" due to "excessive use of pain medication" and prescribed Amitriptyline. (Tr. 271, 1011). An MRI of Plaintiff's brain revealed no evidence of acute intercranial findings, mass displacing lesion, or evidence of hemorrhage; areas of white matter change were nonspecific with multiple possible causes. (Tr. 1021).

On September 21, 2017, after Plaintiff reported ongoing neurologic difficulties, Dr. Alam continued Plaintiff's Amitriptyline prescription. (Tr. 271, 1440). At a follow up appointment on November 16, 2017, Plaintiff reported he was tolerating Amitriptyline well without side effects and that it was "somewhat beneficial" for his headaches. (Tr. 271, 1462). The following week, on November 29, 2017, Plaintiff stated he did not believe Amitriptyline had been "adequately beneficial." (Tr. 271-72, 1491). Nevertheless, his Amitriptyline prescription was continued. (Tr. 1494). On January 29, 2018, Plaintiff reported that his headaches were stable with Amitriptyline but requested a different medication because it was making him drowsy. He was prescribed Nortriptyline (Pamelor). (Tr. 272, 1515, 1513, 1518). On March 15, 2018, Plaintiff complained of worsening daily headaches and his medication was increased. (Tr. 272, 1539, 1542). On May 10, 2018, Plaintiff reported that he found the medication helpful for his headaches but wanted to see further improvement. Dr. Alam again increased Plaintiff's headache medication. (Tr. 272, 1562, 1565-66). Impairments that are controllable or amenable to treatment cannot be considered disabling. See, e.g., Brown v. Astrue, 611 F.3d 941, 955 (8th Cir. 2010).

The ALJ also considered Plaintiff's testimony that he has approximately five migraines an hour because of his multiple sclerosis, lasting anywhere from a few seconds to ten minutes or more. When he is having a migraine, he must stop what he is doing and place his finger where he

9

feels pain to help it go away. (Tr. 220). The ALJ conducted a proper evaluation of Plaintiff's subjective symptoms (discussed infra) and then accommodated those limitations he found credible by restricting Plaintiff to simple, routine and repetitive tasks in a low stress job requiring only occasional decision-making, occasional changes in the workplace, and no paced production work. (Tr. 270). This analysis demonstrates that the ALJ adequately considered the limitations attributable to Plaintiff's headaches, whether or not he found them to be a severe impairment. Thus, the ALJ did not err in finding that Plaintiff's headaches were not a severe impairment.

### B. Medical opinion evidence

Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of a claimant's impairment(s), including his symptoms, diagnoses, and prognoses; what he can still do despite her impairments; and his physical and mental restrictions. 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1) (2017).[2] "The opinion of a treating physician is generally afforded 'controlling weight if that opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.'" Chesser v. Berryhill, 858 F.3d 1161, 1164 (8th Cir. 2017) (quoting Wildman v. Astrue, 596 F.3d 959, 964 (8th Cir. 2010)). "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." Hogan v. Apfel, 239 F.3d 958, 961 (8th Cir. 2001). The ALJ may discount or disregard a treating physician's opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. See Hamilton v.

---

[2] In March 2017, the Social Security Administration amended its regulations governing the evaluation of medical evidence. For evaluation of medical opinion evidence, the new rules apply to claims filed on or after March 27, 2017. See 20 C.F.R. §§ 404.1520c, 416.920c. Because the claims under review here were filed before March 27, 2017, the Court applies the rules set out in 20 C.F.R. §§ 404.1527 and 416.927.

Astrue, 518 F.3d 607, 610 (8th Cir. 2008). "When an ALJ discounts a treating physician's opinion, [the ALJ] should give good reasons for doing so." Martise v. Astrue, 641 F.3d 909, 925 (8th Cir. 2011) (quoting Davidson v. Astrue, 501 F.3d 987, 990 (8th Cir. 2007)). Once the ALJ has decided how much weight to give a medical opinion, the Court's role is limited to reviewing whether substantial evidence supports this determination, not deciding whether the evidence supports the plaintiff's view of the evidence. See Brown v. Astrue, 611 F.3d 941, 951 (8th Cir. 2010).

On May 16, 2018, Plaintiff's treating neurologist, Dr. Alam, completed a Multiple Sclerosis RFC Questionnaire opining that Plaintiff's pain, fatigue, or other symptoms are often severe enough to interfere with attention and concentration and that Plaintiff could tolerate low stress jobs. (Tr. 1383-86). He also indicated that Plaintiff should avoid concentrated exposure to humidity and extreme heat. (Tr. 1386). Dr. Alam further opined that on average, Plaintiff would likely be absent from work two days per month because of his impairments or treatment (id.) and would sometimes need to take an unscheduled break for 10-15 minutes when he had a flair. (Tr. 1384). Dr. Alam stated that Plaintiff did not need to use a cane or other assistive device when standing or walking. (Id.). Dr. Alam did not complete the remainder of the RFC Questionnaire because he had not performed a functional capacity test. (Tr. 1383).

The ALJ gave "limited evidentiary weight" to Dr. Alam's opinion because he did not have the opportunity to review the other medical evidence of record before forming his opinion and because his treatment notes consistently document normal clinical examinations, describe Plaintiff as doing well, and not taking maintenance medications for multiple sclerosis. (Tr. 274). Plaintiff argues these reasons are not sufficient to overcome the presumption that a treating physician's opinion should be afforded controlling weight.

Upon review of the record, the Court finds the ALJ properly considered Dr. Alam's opinion and gave good reasons for discounting it. (Tr. 270, 274). The Court notes the ALJ discussed Dr. Alam's opinion in detail and adopted his limitation to avoid concentrated exposure to humidity and extreme heat in the RFC. To the extent the ALJ did not adopt Dr. Alam's opinions because they were inconsistent with his treatment notes, that decision is supported by the record. Although Plaintiff reported issues with, *inter alia*, walking and balancing, gripping objects in both hands, concentration and short-term memory problems, and daily headaches, Dr. Alam's treatment notes document mostly normal clinical examination findings.

On July 18, 2017, Plaintiff's gait was normal, his coordination was intact, and he demonstrated 5/5 strength in all extremities. (Tr. 1010). On September 21, 2017, Dr. Alam noted that since Plaintiff's last visit, he had been stable. (Tr. 1441). An EMG showed no electrodiagnostic evidence of large fiber neuropathy in the upper and lower extremities. (Id.).

On November 16, 2017, Plaintiff returned to Dr. Alam for follow up after a lumbar puncture. He reported that his gait was significantly improved. (Tr. 1462). Plaintiff exhibited normal gait and station, intact sensation, normal coordination, normal motor strength and tone, and normal movement in all extremities. (Tr. 1465). On November 29, 2017, Plaintiff again exhibited normal extremities, motor strength and tone, reflexes, sensation, coordination, and gait. (Tr. 1493-94).

As of January 29, 2018, Plaintiff was not taking any maintenance medication for his multiple sclerosis. (Tr. 1515). He reported that since his last visit he has been doing well, and that after starting on steroids, he was "able to jog again." (Id.). Plaintiff denied any new neurological symptoms and reported that his headaches and fatigue were stable. (Tr. 1515-16). Plaintiff had a

normal physical examination, including normal gait, coordination, sensation, motor strength, reflexes, and motor tone. (Tr. 1518).

On March 15, 2018, Dr. Alam noted that Plaintiff was not reporting any relapse of multiple sclerosis or new neurological symptoms since his last appointment. (Tr. 1539). Likewise, his fatigue had not worsened since his last appointment. (Id.). Upon examination, Plaintiff had normal extremities, cranial nerves, motor strength and tone, sensation, coordination, and gait. (Tr. 1542-43). On May 10, 2018, Dr. Alam reported that Plaintiff was doing well, with no new neurological symptoms or relapse of multiple sclerosis. (Tr. 1562). He is currently on Tecfidera for multiple sclerosis without any side effects. (Id.). Again, Plaintiff exhibited normal extremities, cranial nerves, motor strength, motor tone, sensation, coordination, and gait upon examination. (Tr. 1565-66).

The ALJ reasonably found these mild or normal examination findings inconsistent with the extreme limitations in Dr. Alam's opinion. See Halverson v. Astrue, 600 F.3d 922, 930 (8th Cir. 2010) (the ALJ properly discounted the treating physician's opinions where they were inconsistent with the physician's treating notes, which showed mostly normal mental status examinations). See also Julin v. Colvin, 826 F.3d 1082, 1088 (8th Cir. 2016) (opinions of treating physicians may be given limited weight if they are inconsistent with the record) (citing Papesh v. Colvin, 786 F.3d 1126, 1132 (8th Cir. 2015)); Martise v. Astrue, 641 F.3d 909, 925 (8th Cir. 2011) ("[W]hen a treating physician's opinions are inconsistent …, they are entitled to less weight.") (internal quotation marks and citation omitted).

C. **Subjective symptom evaluation**

At the administrative hearing, Plaintiff testified he had severe memory problems; issues with balance; and daily headaches lasting from ten seconds to more than ten minutes, several times

an hour. (Tr. 220). He further testified that he suffered from low back pain and constant neck pain that made it difficult for him to bend over (Tr. 225) and took naps throughout the day because he felt drained (Tr. 223). It was also Plaintiff's testimony that he drove and worked on his own vehicles, including tune-ups, oil changes, and repairs. (Tr. 215-18). He could do some housework, including cleaning, washing dishes, and laundry, and prepared his own meals. (Tr. 221-22, 421-34). Plaintiff argues the ALJ failed to properly evaluate his subjective symptoms.

In analyzing a claimant's subjective reports, the ALJ considers the entire record, including: medical records; statements from the claimant and third parties; the claimant's daily activities; the duration, frequency and intensity of pain; the dosage, effectiveness, and side effects of medication; precipitating and aggravating factors; and functional restrictions. 20 C.F.R. §§ 404.1529, 416.929; Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). The Court defers to the ALJ's assessment of the claimant's subjective complaints if that assessment is supported by good reasons and substantial evidence. Nash v. Comm'r, Soc. Sec. Admin., 907 F.3d 1086, 1090 (8th Cir. 2018). See also Juszczyk v. Astrue, 542 F.3d 626, 632 (8th Cir. 2008).

Here, the ALJ provided valid and well-supported reasons for discounting Plaintiff's subjective reports. First, the ALJ found the medical record was not fully consistent with Plaintiff's subjective allegations of disabling impairments. Plaintiff repeatedly refused hernia repair (Tr. 1097, 1045-77, 1209-44, 1282-1379), and showed no interest in treatment with a therapist or psychiatrist for his polysubstance abuse (Tr. 272). Failure to pursue a course of treatment may detract from a claimant's credibility. See O'Donnell v. Barnhart, 318 F.3d 811, 819 (8th Cir. 2003).

Regarding Plaintiff's multiple sclerosis, treatment records from both his primary care physician Dr. Turner, and neurologist Dr. Alam, demonstrated relatively normal motor strength and tone and normal movement of extremities. (Tr. 1337, 1348, 1360, 1051-52, 1057, 1068, 1090,

1093, 1097, 1212, 1333, 1337, 1348, 1360, 1465, 1493, 1542, 1565). See Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003) (ALJ may discount subjective complaints that conflict with medical records).

As for Plaintiff's degenerative disc disease, treatment records following a car accident in January 2018 indicate mild degenerative disc disease with mild right neural foraminal stenosis. (Tr. 1404). The ALJ noted that Plaintiff "did not use an assistive device for ambulation, did not attend physical therapy, did not have epidural injections, did not have chiropractic management, did not use a TENS unit, did not use a back brace, and no treating physician recommended that [Plaintiff] undergo back surgery." (Tr. 273). This lack of objective support detracts from Plaintiff's claims of disabling limitations. See, e.g., Kamann v. Colvin, 721 F.3d 945, 950-51 (8th Cir. 2012); Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998) (conservative course of treatment supported ALJ's decision to discredit subjective complaints of pain).

Because the ALJ has provided several valid and well-supported reasons for discounting Plaintiff's allegations, the Court finds no error here. See McDade v. Astrue, 720 F.3d 994, 998 (8th Cir. 2013) (holding a credibility determination based on multiple valid reasons is entitled to deference); see also Roberts v. Berryhill, No. 4:16-CV-1604-SNLJ, 2018 WL 1420241, at *6 (E.D. Mo. Mar. 22, 2018).

## VI. Conclusion

Substantial evidence supports the ALJ's determination of Plaintiff's impairments at step two, as well as his evaluation of Dr. Alam's opinion and assessment of Plaintiff's symptoms. For these reasons, the Court finds the ALJ's decision is supported by substantial evidence on the record as whole, and, therefore, the Commissioner's decision will be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED** without prejudice.

A separate Judgment will accompany this Memorandum and Order.

Dated this 24th day of June, 2021.

_____
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**